**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Ozelle H., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-3050 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ozelle H.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying him disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 16] is DENIED and Defendant's motion for summary judgment [Dkt. 20] is GRANTED. The final decision of the Commissioner is affirmed.

### 1. Procedural History

On May 17, 2023, Plaintiff filed an application for disability and disability insurance income, alleging disability beginning February 4, 2022. [Administrative Record ("R.") 17.] The claim was denied initially and on reconsideration. *Id*. On September 27, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision. [R. 17-30.] The Appeals Council denied review on January 17, 2025 [R. 1], rendering the ALJ's September 27, 2024 decision the final decision of the Commissioner. 20 C.F.R. §404.981. On

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]    Plaintiff filed a "Brief in Support of Reversing the Decision of the Commissioner of Social Security" [Dkt. 16], which the Court views as a motion for summary judgement. Defendant filed a "Memorandum in Support of Motion for Summary Judgement" [Dkt. 20], which the Court views as a cross motion for summary judgement.

March 21, 2025, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

**2.      The ALJ's Decision**

In his September 27, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 17-30.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [R. 20.] At Step Two, the ALJ found Plaintiff suffered from severe impairments of obesity, depression, anxiety, posttraumatic stress disorder, and degenerative disc disease of the lumbar spine. *Id*. At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). *Id*. In determining Plaintiff's mental impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff had (i) a mild limitation in understanding, remembering or applying information, (ii) a moderate limitation in interacting with others, (iii) a mild limitation in concentrating, persisting or maintaining pace, and (iv) a mild limitation in adapting or managing oneself. [R. 22-23.] The ALJ further found the evidence of record failed to establish the presence of Paragraph C criteria. [R. 23.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: "can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, balance frequently, stoop occasionally, kneel frequently, crouch occasionally, crawl occasionally. The claimant can follow simple and detailed but not complex work-related directions. He can interact with supervisors, coworkers, and the public occasionally." [R. 23.]

At Step Four, the ALJ concluded Plaintiff was unable to perform any past relevant work. [R. 28-29.] At Step Five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 29.] Specifically, the ALJ determined Plaintiff would be able to perform the requirements of assembler (DOT# 739.687-030), marker (DOT# 209.587-034), and mail clerk (DOT# 209.687-026)[3]. [R. 29-30.] Accordingly, the ALJ found Plaintiff was not disabled from the application date through the date of the decision. [R. 30.]

### 3.      Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal

---

[3]     The ALJ erroneously listed the DOT# for this position in his decision as #209.587-034 which is the DOT# for "marker". [R. 30.] The correct DOT# for "mail clerk" that the VE provided during her testimony is #209.687-026. [R. 66-67.]

signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion." *Hess*, 92 F.4th at 676. Finally, while reviewing a commissioner's decision, the court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

### 4. Discussion

Plaintiff argues the ALJ erred by failing to (1) properly grapple with the diagnostic findings from Plaintiff's lumbar spine MRI, (2) properly assess the Veterans Affair's (VA) finding of disability and the underlying evidence, and (3) provide a supported rationale for his finding of only an occasional limitation in interacting with others. The Court disagrees.

### a. The ALJ Properly Assessed Plaintiff's Diagnostic Findings

Plaintiff claims the ALJ failed "to properly grapple with the significant lumbar spine MRI study findings in the record," alleging the ALJ merely recited the MRI findings, provided no explanation as to why Plaintiff's lumbar degenerative disc disease would "only impact postural maneuvers and not standing, walking, lifting, or carrying," and failed to seek medical review of the 2024 MRI results by Agency medical professionals which may have led the ALJ to a different conclusion. [Dkt. 16 at 4-7.] To the contrary, the ALJ's decision indicates the ALJ properly assessed the 2024 MRI findings, along with Dr. Peter Hurh's[4] review of those MRI results, and the ALJ built an accurate and logical bridge between the substantial evidence in the record and the RFC.

---

[4]    Exhibit 11F states the examining doctor was Dr. Peter Hurh. [R. 1183, 1186.] The ALJ erroneously refers to Dr. Hurh as "Dr. Huyrh" throughout his decision. [R. 17, 27.]

4

Plaintiff underwent an MRI on June 10, 2024, approximately two weeks prior to the June 24, 2024 Administrative Hearing. [R. 1178-1182.] At the start of the Administrative Hearing, Plaintiff's counsel informed the ALJ of Plaintiff's recent MRI and the corresponding radiology report that was submitted into the record as Exhibit 10F. [R. 39-40.] Plaintiff's counsel also informed the ALJ that Plaintiff was scheduled for a consultation with a back doctor at Jesse Brown VA Medical Center to review the MRI on a date after the hearing. [R. 39.] Plaintiff granted the ALJ permission to obtain Plaintiff's medical records following Plaintiff's back consultation. [R. 41-42.] Once obtained, the ALJ proffered the new medical records (Exhibit 11F and Exhibit 12F) to Plaintiff's counsel. [R. 17, R. 311-315.][5] Given the timing of the MRI and the following consultation, no medical professional retained by the Agency appears to have reviewed the June 2024 MRI results and no request was made at the Administrative Hearing, or prior to Plaintiff appealing the ALJ's decision before this Court, for an Agency physician to review the most recent MRI results. However, the ALJ reviewed and referenced both the June 2024 MRI and Exhibit 11F, Dr. Hurh's lumbar spine evaluation, throughout his decision. [R. 19-29.]

As Plaintiff notes in his motion [Dkt. 16 at 6-7], the Seventh Circuit has repeatedly criticized "ALJs' attempts to deduce the meaning of complex medical documents, such as MRIs" without medical scrutiny. *Tobias B. v. Kijakazi*, No. 20-cv-2959, 2022 WL 4356857, at *6 (N.D. Ill. Sept. 20, 2022); *see also McHenry v. Berryhill*, No. 18-cv-1691, 911 F.3d 866, 871 (7th Cir. 2018) ("We have said repeatedly that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny."); *Akin v. Berryhill*, 887 F.3d 314,

---

[5]    While the Court assumes that R. 311 and R. 313 were intended to proffer each of Exhibit 11F and Exhibit 12F as the ALJ notes in his decision [R. 17], both R. 311 and R. 313 reference Exhibit 12F. Plaintiff's counsel's response accordingly only responds to a proffer with respect to Exhibit 12F. [R. 316.] While Exhibit 11F is now part of the record, it is not clear to the Court whether Exhibit 11F was properly proffered to Plaintiff's counsel. Regardless, any potential objection to Exhibit 11F's inclusion as part of the Administrative Record has long since been waived.

5

317 (7th Cir. 2018) ("[W]ithout an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were "consistent" with his assessment."). However, the ALJ did not "play doctor" here. As indicated throughout Dr. Hurh's lumbar spine evaluation following Plaintiff's office visit on June 28, 2024, Dr. Hurh reviewed Plaintiff's June 10, 2024 MRI. [R. 1183-1188.] Dr. Hurh referenced the MRI results throughout his evaluation where he assessed Plaintiff's functional limitations, attached the radiology report with the MRI findings to his evaluation, and signed and dated both the evaluation and the MRI findings that were attached. *Id*.

While the ALJ did recite findings from the MRI radiology report throughout his decision, he discussed the findings in parallel with Dr. Hurh's opinion. [R. 25, 27-28.] For example, the ALJ noted that the June 2024 MRI "showed multi-level disc desiccation, up to moderate-severe disc height loss at L5-S1 and severe bilateral neural foraminal stenosis at L5-S1 with lesser changes at other levels." [R. 25.] Rather than interpreting the functional limitations stemming from these MRI results, the ALJ discussed Plaintiff's June 2024 exam[6] with Dr. Hurh where Plaintiff "showed generally intact motor strength, normal neurological exam, and some mild limitation in range of motion." *Id*. The record shows that the ALJ relied on Dr. Hurh's medical review of the MRI and Dr. Hurh's evaluation of the Plaintiff following the MRI, not his own interpretation of the MRI results, when forming the RFC. [R. 25, 27-28.]

Plaintiff contends the ALJ did not provide a supported assessment of the MRI results "such as seeking input from medical professionals retained by the Agency" and had he done so, the ALJ may have come to a different RFC or disability finding. [Dkt. 16 at 7.] However, the Seventh Circuit does not limit an ALJ to medical review only by Agency physicians; rather resubmission

---

[6] The ALJ's decision erroneously references a July 2024 exam while citing Exhibit 11F. Exhibit 11F is Dr. Hurh's evaluation dated June 28, 2024.

to a consulting physician is only required where the results of a postdated exam or testing reveal worsening of a claimant's condition such that it could reasonably be expected to change such consulting physician's opinion. *Durham v. Kijakazi*, 53 F.4th 1089, 1094-1096 (7th Cir. 2022) ("[A]lthough [Plaintiff] claims that the testing done in April 2019 rendered the medical opinions stale, the results of that testing—as interpreted by her physicians, not the ALJ—do not reveal a worsening of her condition such that resubmission to a medical expert was required."); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). Here, as discussed, a medical professional (albeit not an Agency physician) reviewed Plaintiff's most recent MRI and assessed Plaintiff's functional limitations, opining Plaintiff could frequently lift up to 10 pounds, occasionally lift 20 pounds, rarely twist, stoop, and crouch/squat, frequently climb stairs, and never climb ladders. [R. 1183-1188]; *see also Rita v. Dudek*, No. 24-cv-5157, 2025 WL 1141179, at *4 (N.D. Ill Apr. 16, 2025). While the June 2024 MRI did indicate "multilevel degenerative changes of the lumbar spine" [R. 1182], these findings, paired with Dr. Hurh's opinion, do not amount to new and decisive evidence that could reasonably be expected to change the consulting physicians' opinions. *Stage*, 812 F.3d at 1125. In fact, the ALJ noted the State Agency medical consultants limited Plaintiff to light work with occasional postural maneuvers without having reviewed the June 2024 MRI. [R. 27.] The ALJ explained that while this finding was "largely supported by the consultative examinations findings and imaging available at initial and reconsideration level," it was further supported by the June 2024 MRI which showed "severe stenosis at multiple levels that would reasonably limit the claimant's postural maneuvers to occasional." *Id*.

The ALJ ultimately limited Plaintiff to light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations. [R. 23.] Plaintiff claims the ALJ provided no support for how

Plaintiff's degenerative disc disease combined with his obesity would "only impact postural maneuvers and not standing, walking, lifting, or carrying" or how Plaintiff's worsening condition, as indicated by his latest MRI, supports a finding that Plaintiff can perform light work. [Dkt. 16 at 5-7.] 20 C.F.R. § 404.1567(b) defines light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds…a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Social Security Regulation (SSR) 83-10 further explains "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours." SSR 83-10. In forming the physical RFC and limiting the Plaintiff to light work, the ALJ reviewed all evidence of record, including Dr. Hurh's opinion which found Plaintiff capable of the requirements of light work even after Plaintiff's most recent MRI. [R. 25, 27 (*referring to* 1182-1188).] Specifically, Dr. Hurh found Plaintiff capable of sitting and standing/walking at least 6 hours in an 8 hour day, of frequently lifting up to 10 pounds, and of occasionally lifting up to 20 pounds. [R. 1184-1185.] The Court finds the ALJ built an accurate and logical bridge between the evidence and the RFC, and the Court will not remand on this basis.

### b.  The ALJ Properly Assessed the VA Evidence Part of the Record

Plaintiff next claims the ALJ erred by failing to assess the underling evidence from the VA's "100 percent" disability determination. [Dkt. 16 at 8.] Plaintiff further contends that while changes to the Social Security Regulations no longer require an ALJ to discuss disability determinations by other agencies, these new regulations are in conflict with the mandate of the Social Security Act itself, which requires review of all evidence in the record, and the ALJ's lack of discussion indicating he was even aware of the VA disability finding was not harmless error. [Dkt. 16 at 10-11.] The Court addresses Plaintiff's arguments in reverse.

The Social Security Act requires the Commissioner to "consider *all* evidence available in such individual's case record[.]" 42 U.S.C. § 423(d)(5)(B) (emphasis added). However, more recent regulations have determined certain evidence may be exempted from review. Disability decisions made by other governmental agencies fall into this category. 20 C.F.R. §404.1504. As the regulations state:

> Other governmental agencies and non-governmental entities—such as the Department of Veteran Affairs…make disability…and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency…is based on its rules, it is not binding on us and is not our decision about whether you are disabled…under our rules. Therefore, in claims filed on or after March 27, 2017, we will not provide any analysis in our determination about a decision made by any other governmental agency[.]

20 C.F.R. §404.1504 (citation omitted); *see also* 20 C.F.R. § 404.1520b(c)(1) (categorizing decisions by other governmental agencies as "evidence that is inherently neither valuable nor persuasive"). The Seventh Circuit, in a decision predating the effective date of the new regulations (but on notice of the upcoming changes), explicitly noted "for future reference" that under the new regulations, ALJs will "not try to analyze the other agency's decision, although it will consider the decision's supporting evidence." *Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017). As Plaintiff recognizes [Dkt. 16 at 10] and the Commissioner notes [Dkt. 20 at 7], other Circuits have also upheld the validity of the 2017 regulations. *See Rogers v. Kijakazi*, 62 F.4th 872, 878 (4th Cir. 2023) (finding the ALJ did not err by "adhering to the new rules and declining to accord substantial weight to the VA's determination that [Plaintiff] is 100% disabled"); *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (finding the ALJ did not err by excluding Plaintiff's VA disability rating from her analysis as the 2017 regulations remove any requirement for an ALJ to do so).

Plaintiff alleges the "change to the regulations exempting the need to consider certain evidence when determining disability…is contrary to the express mandate of the Social Security Act" which requires the ALJ to consider all evidence. [Dkt. 16 at 10-11.] In support of Plaintiff's

argument for the Court to find that the SSA's 2017 regulations "cannot be squared with the Administration's interpretation of the [Social Security] Act", Plaintiff cites the Supreme Court decision in *Loper Bright Enterprises* which limited the deference previously afforded to agencies to resolve statutory ambiguities. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402-403 (2024) (overruling *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1948)). Instead, the Supreme Court stated, "Courts must exercise their independent judgement in deciding whether an agency has acted within its statutory authority." *Id*. at 412. Consistent with *Loper Bright Enterprises*, the Court conducts its own analysis as follows.

Congress has explicitly granted the Commissioner of Social Security the "authority to make rules and regulations…for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a). Consistent with this authority, the SSA enacted 20 C.F.R. §404.1504 and explained the Commissioner's rationale in both the Notice of Proposed Rulemaking, 81 Fed. Reg. 62,560 (2016) and the regulation itself. Notice of Proposed Rulemaking, 81 Fed. Reg. 62,560 (2016); 20 C.F.R. §404.1504. As the Commissioner detailed, decisions by other governmental and nongovernmental agencies are "neither valuable nor persuasive evidence" when determining disability under the SSA's rules as the purpose and eligibility criteria for disability benefits under other programs differ significantly from the SSA. Notice of Proposed Rulemaking, 81 Fed. Reg. at 62564. For example, the purpose and eligibility criteria between the VA and SSA disability differ significantly. While "the VA assigns a percentage disability rating based on a consideration of the effects of a disease or injury on a hypothetical, average person's ability to earn," the SSA performs "an individualized assessment that focuses on that particular claimant's ability to perform work in the national economy." *Id. at* 62,564-62,565. For this reason, the Commissioner implemented a rule that does

not bind the Agency to a determination by another governmental agency or nongovernmental entity but does require all underlying evidence related to such a determination by another governmental agency or nongovernmental entity received to be considered. 20 C.F.R. §404.1504. The Court finds the Commissioner's rationale to be compelling and finds the Commissioner acted within its statutory authority in enacting 20 C.F.R. §404.1504. *Loper Bright Enterprise*, 603 U.S. at 371 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) ("Courts exercising independent judgement in determining the meaning of statutory provisions…may…seek aid from the interpretations of those responsible for implementing particular statutes."). Consequently, the Court finds the ALJ did not err by excluding Plaintiff's VA disability rating from his analysis.

Plaintiff also claims the ALJ erred by not assessing the evidence underlying the VA's 100 percent disability determination, faulting the ALJ for failing to assess evidence both included and not included in the record. [Dkt. 16 at 8-9.] While the ALJ was not required to and may not have discussed every piece of evidence, it is clear the ALJ did consider the entire record, including records from the VA and those that detail Plaintiff's history of PTSD. [R. 19]; *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."). Among other evidence, the ALJ explicitly referenced Plaintiff's testimony about seeing Dr. Budisin through the VA [R. 24-25], Plaintiff's "unremarkable mental status examinations" at the VA [R. 25], Plaintiff's enrollment in a PTSD clinic at the VA [R. 26], and Plaintiff's participation in group counseling at the VA [R. 26].

With respect to the VA disability determination itself, the Court notes that while the VA's disability finding is referenced several times throughout the record, the VA's disability determination documentation was not submitted into the record. In a footnote, Plaintiff puts the

onus on the ALJ for failing to obtain and discuss the relevant evidence, stating that "[i]f the ALJ wanted the VA's original disability rating document, then he should have requested it." [Dkt. 16 at 8.] Plaintiff cites case law arguing that it was the ALJ's duty to investigate and develop the record. [Dkt. 21 at 7 (citing *Sims v. Apfel*, 530 U.S. 103-110-11 (2000); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)).] While the ALJ generally must do so, the "relevant regulation provides that when considering the disability decision of another governmental agency, the SSA will consider all of the supporting evidence underlying the decision *that we receive as evidence in your claim*." *Jester v. Saul*, No. 19-cv-793, 2020 WL 4040586, at *3 (E.D. Wis. July 17, 2020) (citations omitted). Similar to the facts in *Jester*, Plaintiff was represented by counsel throughout the administrative proceedings and did not submit the relevant documentation into the record. *Id*. Plaintiff's argument that the ALJ requested Plaintiff's consent at the Administrative Hearing to obtain evidence from the VA, and that the ALJ should have then requested the relevant documentation if he wanted it, misrepresents the facts. [Dkt. 21 at 7.] At the hearing, the ALJ only obtained Plaintiff's permission to obtain medical records related to Plaintiff's upcoming back consultation and cognitive behavioral therapy, the second of which Plaintiff's counsel requested the ALJ obtain. [R. 41-44.] Plaintiff's counsel made no such request for the VA disability determination documentation. Consequently, the Court cannot find that the ALJ failed to review underlying evidence when it was never submitted into the record as required by the relevant regulations. *Jester*, 2020 WL 4040586, at *3 ("Given that the VA's decision is not binding on the SSA and the claimant did not provide the [] evaluation to the ALJ, I do not find that the ALJ erred by failing to procure the record himself or consider it in his decision."). The Court will not remand on this basis.

      **c. The ALJ Provided a Supported Rationale Between the Evidence and the RFC**

Lastly, Plaintiff claims the ALJ erred by failing to construct a supported bridge between the evidence and the mental limitations in the RFC. Specifically, Plaintiff claims the ALJ erred by not explaining "why his finding that [Plaintiff] was moderately limited in interacting with others was accommodated by a limitation to occasional interaction" and how Plaintiff's "mild limitation in his ability to concentrate [] was addressed only by the restriction for him to follow simple and detailed, but not complex work-related directions." [Dkt. 16 at 11-15.] The Court finds the ALJ properly considered the record and built a logical and accurate bridge between the evidence and the RFC.

While Plaintiff attempts to draws the Court's attention to Plaintiff's "ongoing difficulty interacting with others" [Dkt. 16 at 12], the Court finds the ALJ properly considered the evidence of record. When evaluating the Plaintiff for Paragraph B criteria and finding Plaintiff has a moderate limitation in interacting with others, the ALJ identified Plaintiff's "primary limitations in this domain appear to arise from interpersonal stressors" including his "contentious relationship with his child's mother…[and] significant involvement with the court and legal system." [R. 22.] The ALJ also recognized arguments Plaintiff had with coworkers and his manager, his poor emotion management which led to altercations at work, and his "dysfunctional relationship with women." *Id*. However, as the ALJ explains throughout his decision, Plaintiff's record also indicates Plaintiff participated in a partial hospitalization program between February through March 2024 to "help him manage his stress and romantic relationship" and where his goal was to learn "better coping strategies" [R. 22, 26-27 (*referring to* 1166-1167, 1231-1232)], Plaintiff began group psychotherapy in April 2024 "with visit notes generally showing the claimant was engaged and made appropriate and relevant comments" [R. 27 (*referring to* 1196)], and Plaintiff's mental status exam results typically found Plaintiff "pleasant and cooperative" with his providers [R. 22,

28 (*referring to* 403, 423, 425, 449, 461, 463)].

The ALJ also properly considered the opinions of Plaintiff's mental health team, Dr. Budisin and Dr. Koziol, who opined Plaintiff had a "marked" limitation in interacting with others. [R. 28.] As the Seventh Circuit has held, "an ALJ must consider the entire record" and "is not required to rely entirely on a particular physician's opinion or choose between the opinions [] of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). However, in evaluating medical opinions, an ALJ is required to articulate how persuasive he or she found the medical opinions and evaluate the supportability and consistency (among other factors) of the opinion with the record. 20 C.F.R. § 404.1520c(b)(2). The ALJ did so here, noting he found Dr. Budisin and Dr. Koziol's opinions unpersuasive because their opinions were not "supported by the various psychological and psychiatric exams in the file." [R. 28.] The ALJ further explained Dr. Budisin and Dr. Koziol's opinions were inconsistent with the record, pointing to Plaintiff's primary limitation to be from interactions in the workplace that he finds triggering[7], Plaintiff's pleasant and cooperative demeanor with his medical providers, and Plaintiff's records from participation in group therapy. *Id*. Additionally, it is clear the ALJ did not disregard contrasting evidence. Prior to evaluating Dr. Budisin and Dr. Koziol's opinions, the ALJ discussed records showing reports of conflict in the workplace, possible conflict during Plaintiff's partial hospitalization program, and that Plaintiff left some other jobs due to problems in interacting with coworkers and supervisors, including because Plaintiff perceived the work environment to be racist. [R. 26-27.] The ALJ explained that this collective evidence "is not consistent with an inability to interact with others in a workplace setting" and rather "is consistent with a limitation to only occasional interaction with

---

[7] For example, earlier in his decision the ALJ discussed how Plaintiff testified to having significant interpersonal problems while employed at Ford and Plaintiff indicated that "some of these problems at Ford occurred because [he felt his employer was] not complying with his work restrictions." [R. 24.]

others." [R. 28.] The record indicates Plaintiff is capable of interacting with others in different settings and a reasonable mind would find this adequate to support the ALJ's conclusion that Plaintiff can interact with supervisors, coworkers, and the public *up to* one-third of the workday. *See Biestek*, 139 S. Ct. at 1154; SSR 83-10 ("'Occasionally' means occurring from very little up to one-third of the time.").

Drs. Budisin and Koziol also found Plaintiff had a "marked" limitation in concentrating and Plaintiff alleges the ALJ failed to explain how "despite such evidence, [Plaintiff] had only a mild limitation in his ability to concentrate" or how this limitation was addressed "only by the restriction for him to follow simple and detailed, but not complex work-related directions." [Dkt. 16 at 14.] As noted above, the ALJ did not find Drs. Budisin and Koziol's opinion to be persuasive. [R. 28.] When evaluating the Plaintiff for Paragraph B criteria and finding Plaintiff has a mild limitation in concentrating, persisting or maintaining pace, the ALJ noted that Plaintiff was making significant progress in an MBA program prior to withdrawing due to interpersonal stressors such as ongoing custody hearings, how a social worker flagged no significant concentration deficits during a more recent visit (whereas the record shows that prior progress notes had flagged difficulty in concentration), and that Plaintiff himself has indicated "the structure within a workday helps him manage his symptoms." [R. 22 (*referring to* R. 350, 423, 663).] Additionally, the ALJ cited the consultative psychologist, Dr. Curran's exam findings where Dr. Curran found no concerns with "significant cognitive dysfunction, perceptual disturbance, or disorder thought process." [R. 26 (*referring to* R. 642).] The Court further notes that Dr. Curran's exam also indicates that Plaintiff's "memory and concertation appeared to be grossly intact." [R. 642.] In further support of the RFC, the ALJ also noted the Plaintiff was in his MBA program for a large portion of the period at issue and was able to take part in art therapy suggesting that he

15

is able to "engage in various other tasks that require at least detailed work" (as opposed to complex work which the ALJ found Plaintiff would struggle with given his struggles with applying to jobs through USAJobs which the ALJ identified as "complex"). [R. 24, 26-27.] As above, the Court finds the ALJ built a logical and accurate bridge between the evidence and the RFC and that the evidence is adequate to support the ALJ's conclusion. *See Biestek*, 139 S. Ct. at 1154. The Court also will not remand on this basis.

**5.      Conclusion**

For all of the foregoing reasons, the Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 16] is DENIED and Defendant's motion for summary judgment [Dkt. 20] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: April 6, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

16